UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE J. GERRANS,<br><br>Plaintiff,<br><br>v.<br><br>ERHAN GUNDAY, et al.,<br><br>Defendants. | Case No. 24-cv-02187-JSC<br><br>**ORDER OF DISMISSAL WITH LEAVE TO AMEND IN PART; DENYING MOTIONS TO APPOINT MARSHAL AND TO PROCEED IN FORMA PAUPERIS**<br><br>Re. Dkt. Nos. 2, 5 |

## INTRODUCTION

Plaintiff, an inmate in FCI La Tuna prison in Anthony, Texas, proceeding without attorney representation, filed a civil complaint against Defendants Erhan Gunday, ES Medical LLC, Lloyd Yarbrough, Kevin Brown, Charles N. Wang, Alex Hsia, Lon Chu, Diana Ta, Dennis Meyer, Christoper M. Gerrans, Whitney Gerrans, Phuc Main, Jerry Katzman, Steve Barney, and Assistant United States Attorney ("AUSA") Robin Harris ("Defendants") for violating the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962, 1964. (Dkt. No.1 at 1.)[1] For the reasons discussed below, the complaint is dismissed for failure to state a claim that is capable of judicial determination. Plaintiff is granted leave to amend certain claims. Plaintiff's motion for leave to proceed in forma pauperis is DENIED because he has paid the filing fee. His motion for appointment of the Marshal for service of the summonses and complaint is also DENIED.

## BACKGROUND

Plaintiff was indicted in the Northern District of California for wire fraud, money laundering, making false statements to the FBI, and contempt and witness tampering. "All of the

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

charges stemmed from Mr. Gerran's conduct as President and CEO of Sanovas Inc., a medical and surgical device company." *United States v. Gerrans*, 477 F. Supp. 3d 1035, 1040 (N.D. Cal. 2020). In summary, Plaintiff

> was charged with taking millions of dollars from Sanovas, a medical device start-up company, which he co-founded. He was alleged to have billed the company for personal expenses and was accused of taking millions of dollars from Sanovas by fraudulent invoices and book entries, using shell entities, and lying to the board of directors. The money was taken to purchase a multi-million-dollar home, extravagant jewelry and home furnishings, vacations, and expensive cars. Mr. Gerrans was subsequently interviewed by the FBI about the allegations in this case; he made false statements and provided false documents related to his financial dealings involving Sanovas in an attempt to cover up his crimes. After he was indicted, while released on bond, Mr. Gerrans violated the terms of the bond by intimidating, harassing, and improperly communicating with his brother, Chris Gerrans, who was also the subject of a related FBI investigation.

*Id.* A jury convicted Mr. Gerrans of all counts, and his convictions were affirmed. No. 20-10378, 2022 WL 73051 (9th Cir. Jan. 7, 2022). The Supreme Court denied his petition for certiorari. *Gerrans v. United States*, 143 S. Ct. 174 (Oct. 3, 2022).

Plaintiff filed this action on April 12, 2024, without lawyer assistance. The complaint alleges a federal RICO claim, is nearly 80 pages, and includes 308 paragraphs. In the complaint, he alleges he was the Co-Founder, Chairman, President, CEO, and a majority shareholder in Sanovas and its 27 subsidiary corporations. (Dkt. No. 1 ¶ 8.) While he makes a single RICO claim, he alleges what he calls four separate RICO "phases." (*Id.* ¶¶ 23-27.)

RICO Phase I involved certain Defendants stealing Plaintiff's intellectual property and customers from Sanovas. (*Id.* ¶ 28.) RICO Phase II consisted of the "corrupt[ion]" of Sanovas' records, accounting, and financial books, as well as industrial espionage, to "sabotage, discredit, and criminally interfere with Plaintiff" and his "businesses." (*Id.* ¶ 45.) RICO Phase III was an enterprise to steal and counterfeit corporate checks, commit bank fraud, and embezzle over $2 million from Plaintiff and his businesses. (*Id.* ¶ 66.) Finally, RICO Phase IV established an enterprise to steal Plaintiff's money, intellectual property, businesses, and physical property, by "influenc[ing] and weaponiz[ing]" the United States Department of Justice to prosecute, convict, and incarcerate Plaintiff to further the other RICO enterprises. (*Id.* ¶ 83.) This racketeering

enterprise included a flawed criminal investigation and prosecution led by an AUSA (Defendant Robin Harris) with conflicts of interest, an effort by Defendant Jerry Katzman to take control of Sanovas, and a private civil lawsuit intended to drain Plaintiff of resources he needed to defend himself and investigate the other defendants' RICO conduct.  (Dkt. No. 1 at 28-34.)

## STANDARD OF REVIEW

Federal courts must engage in a preliminary screening of complaints in which prisoners seek redress from a governmental entity or officer or employee of a government entity, even if the prisoner plaintiff has paid the filing fee.  28 U.S.C. § 1915A(a); *see also Chavez v. Robinson,* 817 F.3d 1162, 1168 (9th Cir. 2016), as amended on reh'g (Apr. 15, 2016) ("Section 1915A mandates early review—'before docketing [ ] or [ ] as soon as practicable after docketing'—for all complaints 'in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.'").  While Plaintiff paid the filing fee, he makes a claim against at least one government employee—AUSA Robin Harris.  So, Section 1915A requires the Court to sua sponte review the complaint and dismiss any claim that "is frivolous, malicious, or fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief."  *Id*. § 1915A(b).

## 1915A REVIEW

Under the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994), a civil action "is barred if success in the action would 'necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement.'"  *Lemos v. County of Sonoma*, 40 F.4th 1002, 1005 (9th Cir. 2022) (en banc) (quoting *Heck*, 512 U.S. at 486).  *Heck* bars a civil action when the plaintiff's "criminal conviction is fundamentally inconsistent with the unlawful behavior" for which damages are sought.  *Smith v. City of Hemet*, 394 F.3d 689, 695 (9th Cir. 2005) (en banc).  To put it another way, *Heck* bars a civil claim if the plaintiff's success on that claim "would necessarily imply the invalidity of his conviction or sentence."  *Heck*, 512 U.S. at 487.

So, before a plaintiff may pursue an action in which the claim arose from "harm caused by actions whose unlawfulness would render [his] conviction or sentence invalid," the plaintiff must first prove he had his conviction vacated or otherwise favorably terminated.  *Id.* at 486-87.  While

3

1    *Heck* involved a claim under 42 U.S.C. Section 1983, the doctrine precludes other civil claims,
2    including RICO claims, that imply the invalidity of a criminal conviction.  *See Oberg v. Asotin*
3    *Cnty.*, 310 F. App'x 144, 145 (9th Cir. 2009); *see also Swan v. Barbadoro,* 520 F.3d 24, 26 (1st
4    Cir. 2008) (applying *Heck* to bar a RICO claim); *Rouser v. Johnson*, No. 94-30013, 1994 WL
5    523784, at *4 (5th Cir. 1994) ("Otherwise, henceforth plaintiffs like Rouser would simply couch
6    their allegations under RICO in order to avoid the bar of *Heck* ...."); *Paulus v. Light*, No. 96-2355,
7    1997 WL 461498, at *1 (6th Cir. 1997) ("Paulus's civil RICO claim is likewise barred by *Heck*.");
8    *Alexander/Ryahim v. Monroe*, 326 Fed. Appx. 977, 978 (8th Cir. 2009) (applying *Heck* to a
9    conspiracy claim).

While the *Heck* bar is an affirmative defense, because this is an action covered by the Prisoner Litigation Reform Act (PLRA), the Court is required to dismiss the complaint sua sponte if it concludes a *Heck* bar defeats the plaintiff's claim.  *Hebrard v. Nofziger*, 90 F.4th 1000, 1007 (9th Cir. 2024).

### A.    AUSA Robin Harris

Plaintiff alleges one of the prosecutors on his criminal case, Defendant Robin Harris, was involved in the RICO Phase IV racketeering enterprise.  Specifically, he alleges Harris conspired with other defendants to "orchestrate an unlawful investigation, illegal prosecution, corrupt incarceration and deliberate punishment of Plaintiff to protect her Conflicts of interest and corrupt activity from becoming known." (Dkt. No 1 at ¶ 22.)  Plaintiff further alleges she conspired with defendant Chris Gerrans to "manufacture False Claims against Mr. Gerrans, to make False allegations about Mr. Gerrans, to bare False Witness, to give False Testimony, and to present False Evidence against Mr. Gerrans." (*Id.* ¶ 86(J).)  She "use[d] the Racketeers as 'Star Witnesses' in a 'Sham Trial' that left out 50% of the evidence (which happened to document Mr. Gerrans['] Actual and Factual innocence)." (*Id.* ¶ 86(E).)  And she "criminally influenced the Court to let Chris [Gerrans] keep ALL of the stolen Money and Property he embezzled from his Brother and his Brother's Businesses." (*Id.* ¶ 89.)  She manufactured "false testimony, false evidence, and false and salacious narratives to manufacture false charges and false press against Mr. Gerrans to obtain his false incarceration." (*Id.* at ¶ 235.)

4

The RICO claim against AUSA Harris fails for two fundamental reasons.  First, as the complaint's allegations recited above demonstrate, *Heck* bars Plaintiff's RICO claim against Harris.  Plaintiff seeks damages from AUSA Harris on the grounds his conviction was wrongly obtained.  So, he can pursue such damages claim only if his conviction is overturned or otherwise vacated.  He has not and cannot show that has happened.  So, his RICO claim against AUSA Harris fails unless and until his conviction is overturned.

Second, AUSA Harris is entitled to absolute immunity for much of her challenged conduct. Prosecutors are entitled to absolute immunity for their conduct in evaluating evidence, preparing to present that evidence at trial or to the grand jury, and making that presentation to the court and a jury.  *See Buckley v. Fitzsimmons*, 509 U.S. 259, 272–74 (1993); *see also Van Beek v. AG-Credit Bonus Partners*, 316 F. App'x 554, 555 (9th Cir. 2008) (applying absolute immunity to RICO claim); *see also Swallow v. Torngren,* No. 17-CV-05261-BLF, 2018 WL 2197614, at *4 (N.D. Cal. May 14, 2018), aff'd, 789 F. App'x 610 (9th Cir. 2020) (same).

Plaintiff's allegation that AUSA Harris's investigation was "adversely influenced" by a conflict of interest to serve her "Personal, Financial, Political and Professional interests" (Dkt. No. 1 at ¶¶ 228, 234) does not avoid the *Heck* bar.  While the Ninth Circuit has held that when a prosecutor faces an actual conflict of interest, *and files charges he knows to be baseless*, he is acting outside the scope of his authority and lacks immunity, *Condos v. Conforte*, 596 F. Supp. 197, 201 (D. Nev. 1984) (discussing *Beard v. Udall*, 648 F. 2d 1264 (9th Cir. 1981)), given Plaintiff's conviction, he cannot show the charges against him were baseless unless and until his conviction is overturned.  Success on his RICO claim against AUSA Harris would imply the invalidity of his conviction.

So, the RICO claim against AUSA Harris is dismissed. The dismissal is without leave to amend as the *Heck* bar remains.  But the dismissal is also without prejudice in the event Plaintiff's conviction is somehow overturned.  *See Trimble v. City of Santa Rosa*, 49 F.3d 583, 585 (9th Cir. 1995) (providing claim barred by *Heck* should be dismissed without prejudice).

### B.     Other Defendants

The complaint demonstrates that much of the RICO claim against the remaining

5

defendants is also barred by *Heck*. For example, Plaintiff alleges defendants Gunday, Yarbrough, and Chris Gerrans "manufacture[d] False Evidence, proffer[ed] False Testimony and False Narratives and [made up] sensational Lies," partly "in aid to their own Self-Interests and those of Robin Harris." (Dkt. No. 1 at ¶¶ 86(A), 86(W).) The complaint is replete with similar allegations and references to matters raised at Plaintiff's criminal trial. So, the claim against the remaining defendants is also dismissed, but with leave to amend.

## CONCLUSION

For the above reasons,

1.   The RICO claim against AUSA Harris is dismissed without prejudice as barred by *Heck v. Humphrey* and because AUSA Harris is absolutely immune from liability as to at least some, if not all, of the claim. As leave to amend would be futile given Plaintiff's conviction has not been overturned, leave to amend is denied.

2.   The RICO claim against the remaining defendants is dismissed as at least partially barred by *Heck v. Humphrey* and given the allegations, it is impossible for the Court to discern what part of the claim is not barred. As Plaintiff may be able to plead a non-*Heck* barred claim against the remaining defendants, this dismissal is without prejudice and with leave to amend.

3.   Plaintiff may file an amended complaint on or before **February 7, 2025,** that attempts to avoid the *Heck* bar against the remaining defendants. The amended complaint may not add new claims or defendants and must include the caption and civil case number used in this order (No. 24-cv-02187-JSC) and the words "COURT-ORDERED FIRST AMENDED COMPLAINT" on the first page. Because an amended complaint completely replaces the original complaint, *see Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992), Plaintiff may not incorporate material from the original by reference; he must include in his amended complaint all the allegations he wishes to present. **If Plaintiff fails to file an amended complaint within the designated time, the RICO claim will be dismissed against all defendants without prejudice as barred by *Heck*.**

4.   As Plaintiff has paid the filing fee, and the Amended Complaint will not include any governmental defendants, the Court will not review the Amended Complaint pursuant to 28

1  U.S.C. § 1915A.  Instead, **Plaintiff is responsible for service of process on all named**
2  **defendants, should Plaintiff file an amended complaint**.  *Cf.* 28 U.S.C. § 1915(d) (providing
3  officers of court perform service of process when plaintiff is proceeding in forma pauperis).
4  Plaintiff's motion to appoint the United States Marshal to serve the summons and complaint is
5  DENIED.  (Dkt. No. 4.)

6      5.    It is Plaintiff's responsibility to prosecute this case.  Plaintiff must keep the Court
7  informed of any change of address by filing a separate paper with the clerk headed "Notice of
8  Change of Address."  He also must comply with the Court's orders in a timely fashion.  Failure to
9  do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of
10 Civil Procedure 41(b).  Reasonable requests for an extension of a deadline will be allowed upon a
11 showing of good cause if the request is filed prior to the deadline.

12      6.    Plaintiff's application to proceed in forma pauperis (Dkt. No. 2) is DENIED as
13 moot in light of his payment of the filing fee.

14 This order terminates docket numbers 2 and 4.

15 **IT IS SO ORDERED.**

16 Dated: December 11, 2024

JACQUELINE SCOTT CORLEY
United States District Judge